IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID LYNN PECHE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:11CV362 |
| ) | |
| ALVIN W. KELLER, JR., and ) | |
| TODD W. PINION, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed by state prisoner David Lynn Peche pursuant to 42 U.S.C. § 1983. (Docket No. 2, Complaint ("Compl.").) The Defendants are the secretary of the North Carolina Department of Correction, Mr. Keller, and superintendent of the Piedmont Correctional Institution ("PCI"), Mr. Pinion. Defendants move to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 24.) Plaintiff has moved to amend his claims, and Defendants' motion takes into account these claims as well. (Docket No. 23.) Plaintiff has responded to Defendants' motion to dismiss and has also filed a "motion not to dismiss." (Docket Nos. 27, 28.) Plaintiff's motion to amend will be granted.

Defendants contend that Plaintiff fails to state a claim upon which relief may be granted because he does not allege that they acted personally in the violation of Plaintiff's Eighth Amendment rights, and because Plaintiff's allegations fail to meet the standard for supervisory liability. (Docket No. 25.) Defendants also argue that qualified immunity shields them from claims for monetary damages, which Plaintiff seeks along with injunctive and declaratory relief. (*Id*. at 10-12.)

**FACTS, CLAIMS, AND PROCEDURAL HISTORY**

Plaintiff claims that the conditions at PCI, where he is housed, violate his Eighth Amendment right to be free of cruel and unusual punishment. According to Plaintiff, he is assigned to the chronic disease medical unit where, as the name implies, only those with medical issues should be housed. He says, however, that new arrival inmates who do not meet the medical criteria are assigned to the unit, and they bully, steal from, and rob the other inmates. (Compl. at 3.) Plaintiff also states that he has been hit in the face and stomach by these inmates. (*Id*.)

Plaintiff further alleges that the bunk beds in the medical unit are unsafe because they do not have ladders or safety rails. (*Id*. at 4-5.) He says that as a result other inmates have fallen on him while trying to get into or out of these beds. (*Id*. at 5.)

Plaintiff states that he must walk the length of a football field in inclement weather to get to other areas of the prison, such as the chow hall. (*Id*.) He acknowledges that the

prison provides inmates with "light weight brown jackets" and "thermals," but still believes this condition violates his rights. (*Id*., attach. ¶ 9.)

Plaintiff next claims that he must breathe the "stench of colon bags and second hand smoke 24/7 because the Administration . . . refuses to turn on the exhaust fans." (Compl. at 5.) He says that this condition puts his health at issue.

Plaintiff also says that the pillows and mattresses given to the inmates at PCI are often soiled and not washed or replaced. (*Id*. at 6.) Blankets are exchanged only every six months, according to Plaintiff. (*Id*.)

Next Plaintiff alleges that the officers assigned to the segregation areas do not come into the pods to check on the prisoners. (*Id*.) Plaintiff also complains that cameras should be installed inside the pods to record all activities. (*Id*.)

Plaintiff also claims that some nurses at PCI are "short changing" inmates when giving out narcotic medications. (Compl., attach. ¶ 15.) Plaintiff says that this causes inmates like himself pain and suffering. (*Id*.) He believes that the nurses should have to take drug tests to show if they have the medication in their systems.

In one of his "Declarations" attached to his motion to amend, Plaintiff alleges that he "got hepatitis C while in prison" at PCI. (Docket No. 23, attach.) He also alleges that he was exposed to hepatitis B and tuberculosis at the prison. (*Id*.) Plaintiff also complains that his prescription for oxycodone, a pain killer, expired after he had been taking some type of pain

medication for two years. He says that he had to detox himself and thought he was going to die. (*Id*.)

Plaintiff does not allege that either of the Defendants played any direct role in any of these occurrences. His theory is that because he wrote letters to both Defendants "letting both know of the issues" in his complaint, they are liable for the alleged violations of his Eighth Amendment rights. (Docket No. 29 at 9.) He claims that they both wrote him back letting him know they received his letters. (*Id*.) Plaintiff also claims that his mom, sister, and brother-in-law wrote letters to or otherwise "talked to" Defendants about Plaintiff's complaints. (*Id*.) Plaintiff says that the officers in the chronic disease unit tell inmates that they can do nothing to remedy the complaints without the approval of Defendants. (*Id.* at 10.)

## DISCUSSION

**A.** **Standard**

A plaintiff fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

B.  **Supervisory liability**

The Fourth Circuit has set forth three elements necessary to establish supervisory liability in section 1983 cases: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). A "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread or at least has been used on several different occasions and that the conduct poses an unreasonable risk of harm of constitutional injury. *Id*.

Plaintiff has failed to sufficiently allege facts showing that Defendant Keller, the Secretary of the Department of Correction, had knowledge of a "pervasive and unreasonable risk" of constitutional injury to prisoners such as Plaintiff. Defendant Keller has authority over all of the North Carolina prisons. There is no allegation that the conditions complained about at PCI existed at any other prison. The complaints from Plaintiff, even assuming that Defendant Keller had actual or constructive knowledge of Plaintiff's alleged constitutional violations, fail to show a pervasive risk of constitutional injury from Defendant Keller's perspective. In *Slakan v. Porter*, 737 F.2d 368, 375 (4th Cir. 1984), the Secretary of the

Department of Correction was found to be liable in his supervisory capacity because the evidence showed an unconstitutional practice "was used as a routine control measure in North Carolina prisons." In addition, a commission report had recommended reforms on the practice in the prisons as a whole. *Id*. There are no similar allegations in this action that Plaintiff's alleged violations were occurring at any other North Carolina prison. The two claims that are found herein to survive Defendants' motion to dismiss do not implicate actions at the level of the Secretary. Defendant Keller is not liable in a supervisory capacity and all claims against him should be dismissed.

Turning to Defendant Pinion, Plaintiff incorporates into his complaint copies of his grievances which were considered by Defendant Pinion and which raise the same claims as his complaint. (Docket No. 2-1 at 3, 11-19.) Therefore, Plaintiff has sufficiently alleged facts showing Defendant Pinion's knowledge of these allegations.[1] *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (finding sufficient personal involvement by warden through a "letter alerting him to conditions in the unit"). Plaintiff also alleges that Defendant Pinion did nothing to remedy the alleged unconstitutional conditions. (Compl. ¶ 14.)

---

[1] Plaintiff's reliance upon *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009) to show that Plaintiff has failed to sufficiently allege personal involvement by Defendant Pinion is not persuasive. Inmate Burks suffered from a specific medical condition to which he alleged the defendants had been deliberately indifferent. The only defendant that the appellate court found should be dismissed for lack of personal involvement was Ms. Salinas who simply handled two of Burks's grievances. Such a decision provides little guidance in this conditions of confinement case against the prison warden who had knowledge of the inmate's complaints.

Plaintiff further alleges that a link exists between the alleged unconstitutional conditions and Defendant Pinion's inaction because he allegedly is responsible for the conditions. (*Id*. at 3.)

The only remaining element to be satisfied to establish supervisory liability is that a pervasive and unreasonable risk of unconstitutional injury exists. *See Shaw*, 13 F.3d at 799. To show an unconstitutional condition of confinement, Plaintiff must show: (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions by prison officials. *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991). Basic human needs include such things as food, warmth, and exercise. *Id*.

Most of Plaintiff's allegations simply do not rise to the level of a serious deprivation of a basic human need. These include having to walk about 100 yards in the weather to get to another area of the prison when light jackets and thermal clothing are provided to the prisoners. The fact that prison bunk beds may not have ladders or side safety rails also fails to amount to a serious deprivation of a basic human need. That Plaintiff has occasionally been stepped upon by a fellow inmate attempting to get into a top bunk is simply an inconvenience of prison life. The allegation that segregation pod officers fail to enter the pods when making their rounds also falls short of the constitutional mark. Plaintiff fails to allege sufficient facts for this Court to reasonably infer that this failure, or that of not having cameras in the segregation lock-up area, places Plaintiff's life in danger, as he alleges.

Plaintiff's allegations that his meals are not prepared according to the DOC menu does not rise to the level of a constitutional violation. Although a proper diet may be a basic

human need, Plaintiff's allegations do not show that this need is seriously being deprived. Plaintiff alleges that he has heard the "head dining hall man," Mr. Smith, tell the inmates serving a meal to "use smaller serving spoons" to stretch the meals. (Docket No. 9 at 3-4.) This allegation fails to show that Plaintiff's need for an adequate diet is in serious jeopardy. Plaintiff also complains of inadequate ventilation in the medical unit which causes him to have to smell the stench of colon bags and second-hand smoke. (Compl. at 5.) Plaintiff fails to allege facts sufficient for this Court to infer that the alleged inadequate ventilation is depriving him of a basic human need or that he is being exposed to unreasonably high levels of second-hand tobacco smoke. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). Plaintiff further alleges that pillows and mattresses are soiled and not washed or replaced, and that blankets are exchanged only every 6 months. (Compl. at 6.) Plaintiff alleges that this places him in danger of contracting a disease or being bitten by parasites. (*Id*.) However, Plaintiff does not allege any actual harm has befallen him due to these conditions. Therefore, these conditions are examples of "restrictive" or "harsh" conditions of confinement which do not violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Lankford v. Cannon*, No. C.A. 08-2200, 2009 WL 1361891, (D.S.C. May 12, 2009) (complaints of overcrowding, leaking toilets, dirty mattresses and blankets plus skin rashes fail to show serious deprivation of basic human need).

Finally, attached to his motion to amend is a declaration in which Plaintiff claims that he contracted hepatitis B and C and tuberculosis as a result of the failure of prison officials

in providing him with proper cleaning equipment as a janitor or in screening other inmates. (Docket No. 23-1 at 31-32). Plaintiff also claims that he had to detoxify himself from Oxycodone when the medical unit allowed his prescription to "run out." (*Id*. at 33-34.) Unlike Plaintiff's other claims, there is no allegation that Defendant Pinion was made aware of these two claims or that they were widespread, pervasive, or readily apparent to Defendant Pinion. In addition, there are insufficient facts alleged for this Court to reasonably infer that Defendant Pinion exhibited deliberate indifference with respect to these claims. Supervisory liability is not possible on these two claims. *See Shaw*, 13 F.3d at 799.

All of the above claims against Defendant Pinion should be dismissed.

There are allegations, however, which merit review beyond this stage of the litigation. Plaintiff alleges that he and other inmates are being "short changed" out of their prescribed narcotic, pain medication by the nurses in the medical unit, causing him "great pain and suffering." (Compl. at 19.) A prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering. *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see Mallette v. Dunning*, 896 F.2d 546 (4th Cir. Jan. 24, 1990) (unpublished).

Plaintiff also alleges that "new arrival" inmates are assigned to the chronic disease unit, even though they do not meet the medical criteria for placement there, because there is no other place to house them at PCI. (Compl. at 3-4.) According to Plaintiff, some of these inmates are gang members who assault, bully, steal from, and rob the sick or injured inmates

like himself because they cannot protect themselves.[2] (*Id.*) Plaintiff says that he has been hit in his face and stomach by these "thugs." (*Id.*) Prison officials may be liable for inmate on inmate assaults if they have knowledge of a substantial or pervasive risk of serious harm and act with deliberate indifference by failing to correct the situation. *Smith v. Marcantonio*, 910 F.2d 500, 501 (8th Cir. 1990); *Doles v. Smith*, 36 F.3d 1092 (4th Cir. Sept. 27, 1994) (unpublished).

These claims of a deprivation of pain medication and assault by other inmates should not be dismissed.

C.  **Qualified Immunity**

Defendants also argue that all claims against them should be dismissed based upon the doctrine of qualified immunity. (Docket No. 25 at 10-12.) The previous discussion shows that Plaintiff has sufficiently alleged facts that, if true, show a violation of clearly established constitutional rights with respect to his claims of the deprivation of his pain medication and of being assaulted by other inmates in the medical unit. Therefore, qualified immunity does not shield Defendant Pinion for Plaintiff's claim for money damages. *See Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009).

---

[2] Plaintiff alleges that he is in the chronic disease medical unit because he is waiting to have two surgeries on his shoulder. (Compl. at 11.)

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend (Docket No. 23) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (Docket No. 30) is **DENIED** for the same reasons his previous motion was denied. (*See* Docket No. 12.)

**IT IS RECOMMENDED** that Defendants' motion to dismiss (Docket No. 24), and Plaintiff's motion not to dismiss (Docket No. 28), be granted in part and denied in part, to the extent that all claims be dismissed except those against Defendant Pinion for the alleged deprivation of Plaintiff's pain medication and for allegedly allowing assaults upon Plaintiff by other inmates in the chronic medical unit.

**IT IS ORDERED** that discovery is permitted on the two claims identified immediately above to and including June 1, 2012. Any dispositive motions are due July 1, 2012.

/s/ P. Trevor Sharp<br>United States Magistrate Judge

Date: February 2, 2012