**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DAVID LYNN PECHE,                )
                                 )
            Plaintiff,           )
                                 )
        v.                       )          1:11CV362
                                 )
ALVIN W. KELLER and TODD W.      )
PINION,                          )
                                 )
            Defendants.          )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on the following motions (four of which relate to Defendant Todd W. Pinion's failure to file a timely answer and four of which concern discovery deadlines):

1) Defendant Pinion's Motion for an Enlargement of Time to Complete Discovery and to File Dispositive Motions (Docket Entry 36);

2) Plaintiff's Motion to Deny Defendant [Pinion's] Request for Enlargment [sic] of Time to Complete Discovery and to File Dispositive Motions (Docket Entry 37);

3) Defendant Pinion's Motion for Leave to File his Answer and Affirmative Defenses, Instanter (Docket Entry 38);

4) Plaintiff's Motion to Deny Defendant Pinion [sic] Motion for Leave to File his Answer and Affirmative Defense, Instanter (Docket Entry 39);

5) Plaintiff's Motion for Judgment by Default (Docket Entry 40);

6) Plaintiff's Motion for an Order Compelling Discovery (Docket Entry 41);

7) Plaintiff's Second Motion for an Order Compelling Discovery (Docket Entry 42); and

8) Plaintiff's Motion Asking the Court to Find the Defendant Pinion in Default for Not Filing his Answer by the Deadline to Do So (Docket Entry 43).

For the reasons that follow, the Court:

1) will permit Defendant Pinion to file a belated Answer, will not enter a default, and should not enter a default judgment;

2) will allow Defendant Pinion additional time to respond to Plaintiff's discovery requests and will extend the discovery period and the dispositive motions deadlines by two months each.

<u>BACKGROUND</u>

This case began when Plaintiff, a state prisoner, filed a pro se form Complaint against two state prison officials, Defendants Pinion and Alvin W. Keller, Jr., pursuant to 42 U.S.C. § 1983. (Docket Entry 2.)[1]  Shortly thereafter, Plaintiff asked to amend citations in and exhibits to his Complaint (Docket Entries 4 – 8) and the Court (per United States Magistrate Judge P. Trevor Sharp)

---

[1] The Complaint seeks injunctive relief and unspecified compensatory and punitive damages.  (Docket Entry 2 at 4.)

2

acquiesced (Docket Entry 12).  Following service of the Complaint

(Docket Entries 18, 19), an Assistant Attorney General with the

North Carolina Department of Justice ("NCDOJ") filed a Notice of

Appearance for Defendants (Docket Entry 20) and a Motion for

Enlargement of Time (Docket Entry 21), which requested an extension

"up to and including 29 September 2011 in which to answer or

otherwise plead" (id. at 2), because (among other things):

> [S]taffing issues within the [NCDOJ] have substantially
> increased [the] workload [of Defendants' counsel].  In
> addition to his responsibility for the instant case,
> [Defendants' counsel] presently has responsibility for
> and/or has recently undertaken investigation into at
> least well over two dozen cases presently pending in
> North Carolina federal courts . . . [and] also represents
> the State of North Carolina in a number of other civil
> cases and criminal appeals presently pending in North
> Carolina federal and state courts.

(Id. at 1-2.)  The Court (per Magistrate Judge Sharp) granted the

requested extension.  (Docket Entry 22.)

Prior to the filing of any responsive pleading by Defendants,

Plaintiff filed a Motion to Amend (Docket Entry 23), to which he

appended 38 pages of "Exhibits" (Docket Entry 23-1).  Defendants

thereafter timely moved to dismiss the Complaint.  (Docket Entry

24.)[2]  Subsequently, on February 2, 2012, Magistrate Judge Sharp

granted Plaintiff's requested amendment and recommended "that all

claims be dismissed except those against Defendant Pinion for the

---

[2] Defendants noted Plaintiff's then-pending Motion to Amend
(Docket Entry 23) and stated:  "[T]he arguments raised herein apply
irrespective of whether [it] is allowed."  (Docket Entry 25 at 2.)

alleged deprivation of Plaintiff's pain medication and for allegedly allowing assaults upon Plaintiff by other inmates in the chronic medical unit." (Docket Entry 33 at 11.) He further ordered "that discovery is permitted on the two [surviving] claims . . . to and including June 1, 2012 . . . [and that] [a]ny dispositive motions are due by July 1, 2012." (Id.) By Order of March 12, 2012, the Court (per United States District Judge Catherine C. Eagles) adopted Magistrate Judge Sharp's Recommendation on dismissal of claims. (Docket Entry 35 at 1.)

On April 27, 2012, Defendant Pinion filed his instant Motion for an Enlargement of Time to Complete Discovery and to File Dispositive Motions, which acknowledges that "[s]ometime in late February 2012 and on 20 April 2012 [his counsel] was served with Plaintiff's First and Second Sets of Interrogatories and Request for Production of Documents." (Docket Entry 37 at 2.) According to the instant Motion for an Enlargement of Time, due to circumstances "both unforeseen and beyond the control of [said] counsel or Defendant Pinion, [said] counsel has not had an opportunity to respond to Plaintiff's discovery, has not submitted discovery on behalf of Defendant Pinion, and is not prepared to file dispositive motions on or before 1 July 2012." (Id.) It describes the relevant circumstances as follows:

> [Defendant Pinion's counsel] was hospitalized on an
> emergency basis on 11 October 2011. [He] underwent

4

emergency surgery on 11 October and on 14 October 2011. [He] was discharged on 21 October 2011. As a result of surgical complications [he] was again hospitalized on an emergency basis on 30 October 2011. [He] was discharged on 4 November 2011. As a result of further surgical complications [he] was yet again hospitalized on 25 November 2011. [He] was discharged on 1 December 2011.

[The] physician [for Defendant Pinion's counsel] permitted him to resume his duties on a graduated schedule. Commencing on 13 December 2011 [he] was permitted to return to work, part-time from home three to five hours per day. Commencing on 2 January 2012 [he] was permitted to work, part time from home, up to six hours per day. Commencing on or about 17 January 2012 [he] was permitted to work up to six hours per day, three days a week from home and two days a week in the office. Commencing on 13 February 2012 [he] was permitted to work up to eight hours per day, two days from home and three days in the office. Commencing on 27 February 2012 [he] was permitted to resume his duties full time in the office. [He] presently remains under doctor's care.

[Defendant Pinion's counsel] presently represents North Carolina Department of Correction officials and employees in dozens of cases pending in North Carolina federal and state courts. [He] also represents the State in a number of pending appeals.

Due to staffing and budgetary considerations, during the [foregoing] illness and recuperation [of Defendant Pinion's counsel] none of his cases was reassigned, and enlargements of time were secured as necessary. Consequently, [he] had a considerable backlog of matters to attend to upon his return. [He] has made a concerted and diligent effort to clear the backlog as his doctor has allowed him to increase his work hours. Despite those efforts, however, a substantial backlog still exists and will take some time to clear. Moreover, since his return full time [Defendant Pinion's counsel] has been assigned the defense of seven new cases.

(Id. at 2-3 (internal paragraph numbers omitted).)

Based on these considerations, the instant Motion for an

5

Enlargement of Time "requests that discovery be completed herein on or before 17 September 2012 and that dispositive motions be filed herein on or before 17 October 2012," as well as an extension of Defendant Pinion's time "to respond to the pending interrogatories and requests for production of documents . . . until and including 18 June 2012." (Id. at 3-4.) Rather than file a response brief (as directed by the Local Rules, see M.D.N.C. LR7.3(f)), Plaintiff filed his instant Motion to Deny Defendant Todd W. Pinion [sic] Request for Enlargment [sic] of Time to Complete Discovery and to File Dispositive Motions, which expressed "regret that [Defendant Pinion's counsel] has had some health problems," but opposed any extension largely on the ground that another NCDOJ attorney could have taken responsibility for the case. (Docket Entry 37 at 1-2.)

On May 3, 2012, Defendant Pinion filed the instant Motion for Leave to File his Answer and Affirmative Defenses, Instanter, which acknowledged that "as a result of the [same] circumstances [described in the above-quoted Motion for an Enlargement of Time] . . . [Defendant Pinion's counsel] allowed [the] time to answer the Amended Complaint to lapse." (Docket Entry 38 at 2-3.) The instant Motion for Leave to File requests permission "to file [Defendant] Pinion's answer and affirmative defenses instanter" and asserts that, "[u]nless the Court extends Defendant Pinion's time aforesaid, he will be prejudiced through no fault of his own."

6

(Id. at 3.)[3]  Again, in lieu of a proper response brief, see
M.D.N.C. LR7.3(f), Plaintiff filed his instant Motion to Deny
Defendant Pinion [sic] Motion for Leave to File his Answer and
Affirmative Defense, Instanter.  (See Docket Entry 39; see also
Docket Entries dated May 3, 2012, to present.)

Said Motion to Deny nominally posits that Plaintiff
"sympathize[s] with [the] health problems [of Defendant Pinion's
counsel]," but complains that, because Defendant Pinion's counsel
"does not say what kind of emergency he had or if it was life
threatening[,] [f]or all [Plaintiff] and the Court knows it could
have been something [sic] as a toe or foot surgery." (Docket Entry
39 at 1.)  After conceding that Plaintiff does not believe the
medical emergency reported by Defendant Pinion's counsel involved
something minor like toe or foot surgery, the instant Motion to
Deny states that Plaintiff does "believe [Defendant Pinion's
counsel] is a very smart attorney, and knows how to use the Courts
[sic] sympathy to try and get out of being in default." (Id. at 1-
2.)  Plaintiff's instant Motion to Deny then asserts that Defendant
Pinion's counsel could secure assistance with his work "at his
every beckon . . . .  All he needed to do was asked [sic]." (Id.
at 2.)  Next, the instant Motion to Deny declares in conclusory

_____

[3] Defendant Pinion submitted a copy of the proposed answer
(and related exhibits) along with the instant Motion for Leave to
File.  (Docket Entry 38-1, 38-2, 38-3.)

7

fashion that "[i]t would be prejudice [sic] to [Plaintiff] to allow
. . . [Defendant Pinion] to file his Answer and Affirmative
Defense." (Id.) Finally, Plaintiff's instant Motion to Deny
contends that Defendant Pinion's counsel should have to follow
procedural rules and that the Court should "hold [him] accountable
. . . [by denying Defendant Pinion's] Motion for [L]eave to [F]ile
his Answer and Affirmative Defence [sic]." (Id. at 2-4.)

Next, Plaintiff filed his instant Motion for Judgment by
Default (Docket Entry 40) and his instant Motion Asking the Court
to Find Defendant Pinion in Default for Not Filing his Answer by
the Deadline to Do So (Docket Entry 43), neither of which offer any
argument beyond that set out in Plaintiff's above-discussed Motions
to Deny (compare Docket Entries 37, 39, with Docket Entries 40,
43). In addition, Plaintiff filed his two instant Motions for an
Order Compelling Discovery. (Docket Entries 41, 42.)

The first seeks "an order pursuant to Rule 37(a) of the
Federal Rules of Civil Procedure compelling Defendant Todd W.
Pinion to produce for inspection and copying the documents asked
for . . . pursuant to Rule 34 of the Federal Rules of Civil
Procedure on April the 20th of 2012" (Docket Entry 41 at 1), as well
as "an order pursuant to Rule 37(a)(4) requiring [him] to pay
Plaintiff the sum of $___ as reasonable expenses in obtaining this
order, on the ground that [his] refusal to produce the documents

had no substantial justification" (<u>id.</u> at 2).[4]  The second requests

"an order pursuant to Rule 37(a) of the Federal Rules of Civil

Procedure compelling Defendant Todd W. Pinion to answer all

interrogatories . . . submitted . . . pursuant to Rule 33 of the

Federal Rules of Civil Procedure on April the 20th of 2012" (Docket

Entry 42 at 1) and "an order pursuant to Rule 37(a)(4) requiring

[him] to pay Plaintiff the sum of $____ as reasonable expense in

obtaining this order, on the ground that [his] refusal to answer

the interrogatories had no substantial justification" (<u>id.</u> at 2).[5]

Defendant Pinion filed an omnibus response in opposition to all of

Plaintiff's above-referenced Motions (Docket Entry 44) and

Plaintiff replied in like fashion (Docket Entry 45).

<u>DISCUSSION</u>

<u>Motions related to Defendant Pinion's Failure to Timely Answer</u>

As documented above in the Background section, on May 3, 2012,

before Plaintiff ever sought an entry of default or a default

judgment, counsel for Defendant Pinion candidly acknowledged and

sought leave to correct his failure to file a timely answer (i.e.,

by March 29, 2012, as required upon electronic notice, on March 12,

2012, that the Court had denied in part Defendants' Motion to

_____

[4] The blank beside the dollar sign apparently appears because
Plaintiff wished to "[l]eave [the] amount of expenses paid up to
the judge." (Docket Entry 41 at 2.)

[5] Again, Plaintiff left the "amount of the expenses paid up to
the judge." (Docket Entry 42 at 2.)

9

Dismiss, _see_ Fed. R. Civ. P. 12(a)(4) (providing that, absent contrary court order, "responsive pleading must be served within 14 days after notice of the court's action [denying motion to dismiss]"); _see also_ Fed. R. Civ. P. 6(d) (adding three days to deadline for action when party receives service via electronic means)). In so doing, Defendant Pinion's counsel detailed how, after emergency surgery and multiple hospitalizations, he returned to work on a doctor-ordered, reduced schedule, but without any diminution in his case-load, resulting in a backlog of tasks and a predictable failure to meet deadlines, even after he received medical clearance to resume a regular work-week. (_See_ Docket Entry 38 at 2.) Although Plaintiff previously took no note of Defendant Pinion's absent answer, Plaintiff pounced on the disclosure of that matter with full force by filing motions to deny the requested enlargement of time, to enter a default, and to grant a default judgment. (_See_ Docket Entries 39, 40, 43.)

_Plaintiff's Failure to Follow Applicable Rules_

In the foregoing filings, Plaintiff argued most prominently that the Court should disallow a late-filed answer by Defendant Pinion (and, instead, should enter a default and a default judgment), because Defendant Pinion's counsel should have to follow court rules. (_See, e.g._, Docket Entry 39 at 2-4 ("If [Defendant Pinion's counsel] as a professional attorney doesn't have to follow

10

the Rules of Civil Procedure then why should anyone else have too [sic]. . . I beg the court to hold [Defendant Pinion's counsel] accountable and not grant . . . [the] Motion for Leave to File [an] Answer and Affirmative Defence [sic]."); Docket Entry 40 at 1-2 ("[Defendant Pinion's counsel] is a professional . . . [a]nd thus, [should] be held accountabe [sic] . . . for defaulting on the deadline set by the Court and the Federal Rules of Civil Procedure . . . .").) Regrettably, Plaintiff's own filings regarding these matters do not adhere to this Court's rules.[6] First, Plaintiff did not file a proper response brief to Defendant Pinion's instant Motion for Leave to File his Answer and Affirmative Defenses, Instanter (Docket Entry 38). (See Docket Entries dated May 3, 2012, to present.) This failure generally would cause the Court to grant as a matter of course Defendant Pinion's request to file his answer out-of-time. See M.D.N.C. LR7.3(k) ("If a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice.").

Second, Plaintiff neglected to file a brief with his Motion to Deny Defendant Pinion [sic] Motion for Leave to File his Answer and Affirmative Defense, Instanter (Docket Entry 39), with Plaintiff's

---

[6] Plaintiff's status as a pro se litigant does not excuse him from complying with procedural rules. See Hewitt v. Hutchins, 309 F. Supp. 2d 743, 748-49 (M.D.N.C. 2004).

Motion Asking the Court to Find Defendant Pinion in Default for Not Filing his Answer by the Deadline to Do So (Docket Entry 43), and with Plaintiff's Motion for Judgment by Default (Docket Entry 40). (See Docket Entries dated May 14, 2012, to present.) These deficiencies would authorize the Court to deny said Motions without discussion. See M.D.N.C. LR7.3(k) ("A motion unaccompanied by a required brief may, in the discretion of the Court, be summarily denied."); see also M.D.N.C. LR7.3(a) and (j) (requiring filing of briefs with motions save exceptions that do not include said Motions). Third, and perhaps most significantly, Plaintiff's filings regarding Defendant Pinion's untimely answer (regardless of styling) do not satisfy the underlying purposes of the above-cited briefing requirements, i.e., to provide the Court with "a concise statement of the facts . . . supported by reference to a part of the official record" and "argument, which shall refer to all statutes, rules and authorities relied upon," M.D.N.C. LR7.2(a).

For example, in Plaintiff's Motion to Deny Defendant Pinion [sic] Motion for Leave to File his Answer and Affirmative Defense, Instanter, Plaintiff does not cite a single statute, rule, or authority, but instead simply asserts "I am shore [sic] that somewhere in the Rules of Civil Procedure it says [Defendant Pinion's counsel] should have filed something before time elapsed." (Docket Entry 39 at 3.) Further, in the same filing, Plaintiff

12

suggests, with no identifiable basis, that the health problems of
Defendant Pinion's counsel (which said counsel represented to the
Court involved emergency surgery, repeated hospitalizations, and
regimented recuperation)[7] may not have been serious. (<u>Id.</u> at 1
("[I]t could have been something as [sic] a toe or foot
surgery.").) Moreover, none of Plaintiff's instant filings discuss
the legal standards that apply in this context, much less show why
those standards either preclude the enlargement of time requested
by Defendant Pinion or entitle Plaintiff to entry of a default
and/or a default judgment. (<u>See</u> Docket Entries 39, 40, 43.)

Despite these serious procedural failings by Plaintiff, the
Court will exercise its discretion to consider on the merits his
opposition to Defendant Pinion's belated answer, as well as
Plaintiff's request for entry of a default and a default judgment.

*Federal Rule of Civil Procedure 6(b)(1)(B)*

As documented in the Background section, Defendant Pinion did
not move to enlarge his time to answer until after that deadline
passed. "When an act may or must be done within a specified time,
the court may, for <u>good cause</u>, extend the time . . . on motion made
after the time has expired if the party failed to act because of
<u>excusable neglect</u>." Fed. R. Civ. P. 6(b) (emphasis added).

---

[7] By signing filings containing those factual representations,
Defendant Pinion's counsel "certifie[d] that to the best of his
knowledge . . . [they] have evidentiary support," Fed. R. Civ. P.
11(b)(3), on pain of sanctions, <u>see</u> Fed. R. Civ. P. 11(c).

13

Although this Rule thus nominally requires a showing of both "good cause" and "excusable neglect," "[t]he practical difference between the good cause and excusable neglect standard is difficult to discern . . . . Indeed, in another context, 'good cause' has been equated with 'excusable neglect.'" Sweetwater Investors, LLC v. Sweetwater Apartments Loan, LLC, No. 1:10CV233WKW[WO], 2011 WL 1545076, at *2 n.2 (M.D. Ala. Apr. 25, 2011) (unpublished).

Moreover, the United States Court of Appeals for the Fourth Circuit effectively has collapsed these requirements into a single inquiry. See Lovelace v. Lee, 472 F.3d 174, 203-04 (4th Cir. 2006) ("A district court has discretion to grant an enlargement of time 'upon motion made after the expiration of the specified period where the failure to act was the result of excusable neglect.' Fed. R. Civ. P. 6(b). We find no abuse of discretion here. The district court had a reasonable basis for finding good cause (or excusable neglect) . . . ." (internal ellipses in original)). This approach makes sense because, whereas courts have described the "good cause" standard as "non-rigorous," Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1259 (9th Cir. 2010), "liberal," Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989), and "not . . . particularly demanding," Stark-Romero v. Nat'l R.R. Passenger Co., 275 F.R.D. 544, 547 (D.N.M. 2011), the Fourth Circuit has declared that "'[e]xcusable neglect' is not easily demonstrated," Thompson

v. E.I. DePont Nemours & Co., Inc., 76 F.3d 530, 534 (4th Cir. 1996).  The Court thus will focus on determining whether Defendant Pinion has shown excusable neglect to file an answer out-of-time.

The United States Supreme Court has explained that:

> [T]here is no indication that anything other than the commonly accepted meaning of the phrase ["excusable neglect"] was intended by its drafters.  It is not surprising, then, that in applying [Federal] Rule [of Civil Procedure] 6(b), the Courts of Appeals have generally recognized that "excusable neglect" may extend to inadvertent delays.  Although inadvertence . . . do[es] not usually constitute "excusable" neglect, <u>it is clear that "excusable neglect" under Rule 6(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant</u>.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 391-92 (1993) (internal footnotes omitted) (emphasis added). In other words, the excusable neglect inquiry "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  <u>Id.</u> at 395.  "These include . . . [1] the danger of <u>prejudice</u> to the [opposing party], [2] the <u>length of the delay</u> and its potential <u>impact on judicial proceedings</u>, [3] the <u>reason for the delay</u>, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in <u>good faith</u>."  <u>Id.</u> (emphasis added).[8]

---

[8] In reviewing these factors, courts must not focus only on the actions (or inaction) of the party, but also "on whether [that party's] attorney, as [the party's] agent, did all he reasonably could to comply with the [deadline]."  <u>Pioneer</u>, 507 U.S. at 396; <u>see also</u> <u>id.</u> at 396-97 (taking note of prior decisions, "[i]n other

The first Pioneer factor, i.e., prejudice to Plaintiff, see id., strongly favors Defendant Pinion's position. In this regard, the Court notes that Plaintiff has not identified any cognizable prejudice from the lack of a timely answer, but instead has made only conclusory assertions (see Docket Entry 39 at 2; Docket Entry 40 at 1-2) or ignored the issue (see Docket Entry 43 at 1).[9] Further, the Fourth Circuit has ruled that "delay in and of itself does not constitute prejudice to the opposing party," Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 418 (4th Cir. 2010), and that no prejudice accrues from "los[ing] a quick [default-based] victory," Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988).

The second Pioneer factor, i.e., the length of the delay and its impact on judicial proceedings, see Pioneer, 507 U.S. at 395, also clearly supports a finding of excusable neglect. As detailed in the Background section, a total of 35 days elapsed between the expiration of Defendant Pinion's deadline to answer and the filing

contexts, . . . [holding] that clients must be held accountable for the acts and omissions of their attorneys" in declaring that, "in determining whether [a party's] failure to [meet a deadline] was excusable, the proper focus is upon whether the neglect of [the party] and [the party's] counsel was excusable").

[9] Plaintiff's assertion in his omnibus Reply that, during the pendency of this case, he "live[s] in fear of being harmed further by physical attacks" (Docket Entry 45 at 2) does not show prejudice from the belated answer. As noted below, see discussion, infra, pp. 17 & n.10, the delay in the filing of an answer did not extend the course of this litigation.

of his instant Motion for Leave. In applying the _Pioneer_ factors, other courts have deemed such periods of delay "minimal." _Bateman v. United States Postal Serv._, 231 F.3d 1220, 1225 (9th Cir. 2000); _Smith v. Rockett_, No. CIV-06-492-M, 2010 WL 274497, at *3 (W.D. Okla. Jan. 15, 2010) (unpublished); _Iannace v. Rogers_, Civil No. 03-5973(JBS), 2006 WL 2038492, at *3 (D.N.J. July 18, 2006) (unpublished). Moreover, the Court has not set a trial date or other hearings (_see_ Docket) and thus the minimal delay by Defendant Pinion in answering has not affected any judicial proceedings.[10]

As to the third _Pioneer_ factor, i.e., the reason for the delay, _see_ _Pioneer_, 507 U.S. at 395, Defendant Pinion has identified these inter-related causes for his failure to answer on time (and/or to take note of the deadline before it expired):

1) his counsel's absence from work from mid-October 2011 to mid-December 2011 due to a medical emergency that required both surgery and multiple hospitalizations (Docket Entry 38 at 2);

2) his counsel's medically-ordered restriction to limited work hours from mid-December 2011 to mid-February 2012 (_id._); and

3) his counsel's significant case load, including a back-log of tasks that accumulated during the above-noted four-month period as a result of the failure of the NCDOJ to re-assign any of his

---

[10] Defendant Pinion's late answer did not even forestall Plaintiff's pursuit of discovery because Magistrate Judge Sharp authorized such action (_see_ Docket Entry 33 at 11) before entry of the Order (Docket Entry 35) that triggered the deadline to answer.

17

counsel's cases to other attorneys (due to "staffing and budgetary considerations") and new obligations arising from cases assigned since his counsel's return to full-time status (id. at 2-3).

Had the missed deadline occurred during or shortly after the medical incapacitation of Defendant Pinion's counsel, the "reason for delay" factor would counsel for a finding of excusable neglect. See Dickerson v. Board of Educ. Of Ford Heights, Ill., 32 F.3d 1114, 1118 (7th Cir. 1994) ("[C]ourts have recognized that severe illness may constitute excusable neglect . . . ."). The time for Defendant Pinion to answer, however, expired on March 29, 2012, about six weeks after his counsel resumed full-time work. Moreover, although Defendant Pinion's counsel has shown that, at the time of the answer deadline, he continued to labor under a heavy workload that accumulated during his incapacity and reduced capacity, the Supreme Court has indicated that, in assessing the "reason for delay" factor, courts should "give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the [missed deadline]," Pioneer, 507 U.S. at 398; see also Morris-Belcher v. Housing Auth. of City of Winston-Salem, No. 1:04CV255, 2005 WL 1423592, at *4 (M.D.N.C. June 17, 2005) (Beaty, J.) (unpublished) ("[T]he professional commitments and busy caseload of an attorney are not ordinarily grounds for finding excusable neglect."); but see Jones v. Giant of Md, LLC, No. DKC08-

18

0304, 2010 WL 3677017, at *7 (D. Md. Sept. 17, 2010) (unpublished) ("Plaintiff gives as reason for the late filings the accumulated workload related to the personal loss of a family member . . . . To the extent that her untimely filing is the result of a heavy caseload . . ., Plaintiff's neglect is not excusable. Nevertheless, in light of the recent passing of a family member of Plaintiff's counsel and the minimal delay caused by the late filing, Plaintiff's request for enlargement of time will be granted." (internal brackets, citations, and quotation marks omitted)). In sum, because medical issues largely caused the work overload that led to the missed deadline, a close question exists as to whether Defendant Pinion has a compelling reason for his inaction, but Pioneer nonetheless dictates that the Court must weigh this factor against Defendant Pinion.

Finally, the fourth Pioneer factor, i.e., whether Defendant Pinion acted in good faith, see Pioneer, 507 U.S. at 395, heavily favors a finding of excusable neglect. Notwithstanding Plaintiff's totally unsupported suggestion that Defendant Pinion's counsel may not have suffered an actual medical emergency, the Court detects a complete absence of any sign that Defendant Pinion's counsel behaved in anything but complete good faith. Notably, Defendant Pinion's counsel disclosed his oversight while Plaintiff slept on his rights to seek entry of default.

19

On balance, the Court concludes that the relevant factors establish excusable neglect so as to permit Defendant Pinion to answer out-of-time. Although the Court resolved the equities as to the third factor against Defendant Pinion, all three other factors strongly support a finding of excusable neglect. Although the third _Pioneer_ factor constitutes the most significant, _see_ _Thompson_, 76 F.3d at 534, the Supreme Court's holding in _Pioneer_ makes clear that, even where an attorney is "remiss" in allowing a deadline to pass (i.e., lacks an acceptable reason for his or her oversight), a court may find excusable neglect when the record lacks "any evidence of prejudice to [the opposing party] or to judicial administration in th[e] case, or any indication at all of bad faith," _Pioneer_, 507 U.S. at 398. This case presents such circumstances and therefore the Court rules that Defendant Pinion has shown excusable neglect warranting the filing of a late answer.

_Federal Rule of Civil Procedure 55(a)-(c)_

If the Court had not found excusable neglect under Federal Rule of Civil Procedure 6(b)(1)(B) to allow Defendant Pinion to file his answer out-of-time (such that entry of default under Federal Rule of Civil Procedure 55(a) would follow), the ultimate outcome in this case would remain the same. In other words, "even if the [C]ourt were inclined to enter default against [Defendant Pinion] for filing his answer [35] days late, the [C]ourt would

20

find that default should be set aside for good cause shown.  *See* Fed. R. Civ. P. 55(c)."  <u>Mook v. Gertsema</u>, No. 07-2152-CM, 2008 WL 2859169, at * 2 (D. Kan. July 23, 2008) (unpublished); <u>see also</u> <u>Sony Corp. v. Elm State Elecs., Inc.</u>, 800 F.2d 317, 319 (2d Cir. 1986) ("Notwithstanding the nominal requirement that the non-answering defendant demonstrate excusable neglect in order to prevail on a [Federal] Rule [of Civil Procedure] 6(b) motion, district courts regularly exercise their discretion to deny technically valid motions for default.").

More specifically, where (as here) the plaintiff has sought unspecified damages, the entry of default does not lead automatically to the entry of a default judgment against the defendant; instead, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).  The defendant has a right to oppose entry of a default judgment, <u>see</u> <u>id.</u>, and "[t]he court may set aside an entry of default for <u>good cause</u>," Fed. R. Civ. P. 55(c) (emphasis added).  The Fourth Circuit has held that, "[w]hen deciding whether to set aside an entry of default, a district court should consider [1] whether the [the defendant] has a meritorious defense, [2] whether [the defendant] act[ed] with reasonable promptness, [3] the personal responsibility of the [defendant], [4] the prejudice to the [plaintiff], [5] whether there is a history of dilatory action [by the defendant], and [6]

21

the availability of sanctions less drastic." Payne v. Brake, 439
F.3d 198, 204-05 (4th Cir. 2006). Moreover, the Court must
liberally construe these factors "to provide relief from the
onerous consequences of defaults and default judgments[,]" Lolatchy
v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) (internal
quotation marks omitted), because the Fourth Circuit has
"repeatedly expressed a strong preference that, as a general
matter, defaults be avoided and that claims and defenses be
disposed of on their merits," Colleton Prepatory, 616 F.3d at 417.

Regarding the first Payne factor, "[a] meritorious defense
requires a proffer of evidence which would permit a finding for the
defaulting party . . . ." Augusta Fiberglass, 843 F.2d at 812. As
an attachment to his proposed Answer, Defendant Pinion included
administrative grievance forms which set out determinations by
prison officials that: 1) Plaintiff's housing assignments occurred
pursuant to routine considerations (Docket Entry 38-3 at 6); and 2)
the alleged denial of medicine involved prison officials reasonably
refusing to dispense medicine to Plaintiff when he failed to report
to medical staff at the assigned times (id. at 26). This proffered
evidence would permit a finding for Defendant Pinion on Plaintiff's
two surviving claims and therefore the first Payne factor supports
setting aside any default the Court otherwise might enter.

In assessing the second Payne factor, the question of

22

"[w]hether a party has taken 'reasonably prompt' action, of course, must be gauged in light of the facts and circumstances of each occasion . . . ." <u>United States v. Moradi</u>, 673 F.2d 725, 727 (4th Cir. 1982). As shown in the Background section, Defendant Pinion sought leave to file an untimely answer just over a month after the deadline and before Plaintiff even requested entry of a default. Other courts have weighted this factor toward defendants who delayed acting for similar periods <u>after</u> entry of a default. <u>See</u> <u>Vick v. Wong</u>, 263 F.R.D. 325, 330 (E.D. Va. 2009) (finding that reasonable promptness factor favored setting aside default where defendant did not act for more than two months after entry of default); <u>Wainwright's Vacations, LLC v. Pan Am. Airways Corp.</u>, 130 F. Supp. 2d 712, 718 (D. Md. 2001) (concluding that defendant acted with reasonable promptness by moving to set aside default slightly over a month after its entry). The second <u>Payne</u> factor thus favors setting aside any entry of default that might occur.

As to the third <u>Payne</u> factor (i.e., the "personal responsibility" of the defendant, <u>Payne</u>, 439 F.3d at 204), "justice also demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." <u>Moradi</u>, 673 F.2d at 728. The Fourth Circuit has explained that "[t]his focus on the source of the default represents an equitable balance between [the] preference

23

for trials on the merits and the judicial system's need for finality and efficiency in litigation. When the party is blameless and the attorney is at fault, the former interests control and a default judgment should ordinarily be set aside." Augusta Fiberglass, 843 F.2d at 811 (ruling that "district court erred because it failed to distinguish between the fault of [defendant's] attorney and the fault, if any, of [defendant]"). In this case, for reasons discussed in the prior subsection, Defendant Pinion's counsel, not Defendant Pinion, bears personal responsibility for the failure to answer timely, and, as a result, the third Payne factor supports setting aside any default otherwise entered.

The fourth Payne factor, i.e., "prejudice" to Plaintiff, Payne, 439 F.3d at 204, also counsels against maintenance of any default. The Fourth Circuit has stated that, "[i]n the context of a motion to set aside an entry of default, . . . delay in and of itself does not constitute prejudice to the opposing party. . . ." Colleton Prepatory, 616 F.3d at 418.[11] Nor does prejudice result when a litigant "loses a quick [default-based] victory." Augusta Fiberglass, 843 F.2d at 812. Instead, the Fourth Circuit has described relevant prejudice as "missing witness[es] . . . whose testimony was made unavailable by the delay; . . . dead witness[es]; . . . records made unavailable by the delay[;] . . .

_____

[11] Further, as detailed in the preceding subsection, Defendant Pinion's untimely proposed Answer has not delayed the proceedings.

24

[or] evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay." Lolatchy, 816 F.2d at 952-53. The absence of such prejudice here means this factor favors setting aside any default.

The fifth Payne factor, dilatory conduct by Defendant Pinion, see Payne, 439 F.3d at 204, counsels against setting aside any default, given that (as set forth in the Background section), in addition to missing the answer deadline, Defendant Pinion also failed to timely respond to (or seek an extension for) Plaintiff's first set of discovery requests. Finally, as to the sixth Payne factor (i.e., "the availability of sanctions less drastic," id. at 204-05), "neither party has suggested alternative sanctions, but the Court [can] certainly consider any suggestions that are brought before it . . . . Therefore, this factor counsels in favor of setting aside default." Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp., No. 2:10CV516, 2011 WL 2748685, at *15 (E.D. Va. July 13, 2011) (unpublished) (internal citation omitted).[12]

To summarize, Payne factors one, two, three, four, and six favor setting aside any entry of default and only Payne factor five does not. In addition, the Fourth Circuit has expressed a strong preference that "defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Prepatory, 616 F.3d at

---

[12] For example, Plaintiff could have asked the Court to admonish the NCDOJ to take steps to avoid further missed deadlines.

417. Good cause thus exists to set aside any entry of default and the Court should enter neither a default nor a default judgment.

<u>Discovery-related Motions</u>

By motion dated April 27, 2012, Defendant Pinion has sought:

1) an extension of time to respond to the interrogatories and document requests Plaintiff propounded in late February 2012 and on April 20, 2012 (Docket Entry 36 at 2, 4);

2) an extension of the discovery deadline of June 1, 2012, and the dispositive motions deadline of July 1, 2012 (<u>id.</u> at 1, 3, 4).

*Federal Rule of Civil Procedure 6(b)(1)*

Defendant Pinion had 30 days to address each set of Plaintiff's discovery requests. <u>See</u> Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). Accordingly, as to Plaintiff's second set of discovery requests, Defendant Pinion need only show "good cause" to warrant an extension because he sought relief prior to the expiration of his deadline (which would have fallen on or about May 24, 2012, <u>see</u> Fed. R. Civ. P. 6(a)(1), (d)). <u>See</u> Fed. R. Civ. P. 6(b)(1)(A). However, because Defendant Pinion failed to seek an extension of time to respond to Plaintiff's first set of discovery requests until after the response period had run (in or around late March 2012), Defendant Pinion must show "excusable neglect" to secure relief from that deadline. <u>See</u> Fed. R. Civ. P. 6(b)(1)(B). As support for these requested extensions of time, Defendant Pinion

26

relies on the medical emergency that first precluded and then limited him from working from mid-October 2011 to mid-February 2012, as well as the resulting case load backlog that resulted. (See Docket Entry 36 at 2-3.) In opposing Defendant Pinion's instant Motion for an Enlargement of Time in this regard, Plaintiff failed to identify any prejudice or any bad faith conduct by Defendant Pinion (or his counsel). (See Docket Entry 37 at 1-2.)[13]

Under these circumstances, the Court finds that, as to Plaintiff's second set of discovery requests, Defendant Pinion clearly has satisfied Federal Rule of Civil Procedure 6(b)(1)(A)'s

---

[13] As detailed in the Background section, Plaintiff did not actually file a proper response brief opposing Defendant Pinion's instant Motion for an Enlargement of Time, but instead filed a Motion to Deny said Motion without the required supporting brief. The Court, however, will excuse that procedural deficiency and will consider this matter on the merits. To the extent Plaintiff's omnibus Reply asserts prejudice on the ground that any extension will delay resolution of the case and thus will leave him subject to unlawful prison conditions longer than necessary (see Docket Entry 45 at 2), the Court concludes that a brief extension of the time for Defendant Pinion to answer outstanding discovery would not extend the life-span of this case. Plaintiff remains free to move for summary judgment whenever he chooses and the Court has not yet set a trial date. Plaintiff also has filed two Motions for an Order Compelling Discovery asking the Court to direct Defendant Pinion to provide the discovery in question. (See Docket Entries 41, 42.) Plaintiff cannot claim prejudice from the Court allowing Defendant Pinion to respond to the discovery at issue, when Plaintiff has demanded that the Court order Defendant to do that very thing. Apart from their apparent inconsistency with another of his filings, Plaintiff's two instant Motions for an Order Compelling Discovery also lack merit. First, when he filed them (on May 15, 2012), Defendant Pinion's 30-day response period had not elapsed and thus said Motions failed for lack of ripeness. Second, because the Court will extend the time for Defendant Pinion to provide the requested discovery, said Motions remain unripe.

27

"good cause" standard. See Ahanchian, 624 F.3d at 1259 ("[R]equests for extensions of time made before the applicable deadline has passed should 'normally be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party.'" (internal ellipses omitted) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1165 (3d ed. 2004))); Gerald v. Locksley, ___ F. Supp. 2d ___, ___, 2011 WL 3510845, at *51 (D.N.M. 2011) (holding that acute case load increase would have constituted "good cause" under Fed. R. Civ. P. 6(b)(1)(A). The propriety of an extension as to Plaintiff's first set of discovery requests presents a closer question because of the applicability thereto of the more demanding "excusable neglect" standard under Federal Rule of Civil Procedure 6(b)(1)(B). See Thompson, 76 F.3d at 534 (observing that "'[e]xcusable neglect' is not easily demonstrated"). However, analysis of the relevant factors, see Pioneer, 507 U.S. at 395 (setting out equitable test for determining "excusable neglect"), confirms that this aspect of Defendant Pinion's instant Motion for Enlargement of Time also has merit.

First, the lack of prejudice and bad faith previously noted means that the first and fourth Pioneer factors, see id., favor Defendant Pinion. Similarly, the month-long delay (i.e., from late March 2012, when the response deadline ran, to April 27, 2012, when

Defendant Pinion moved for relief) qualifies as "minimal." <u>See</u> <u>Bateman</u>, 231 F.3d at 1225; <u>Smith</u>, 2010 WL 274497, at *3; <u>Iannace</u>, 2006 WL 2038492, at *3. Given that fact and the fact that the Court has not set a hearing or trial (<u>see</u> Docket), the second <u>Pioneer</u> factor (i.e., "length of the delay" and related "impact on judicial proceedings," <u>Pioneer</u>, 507 U.S. at 395) also supports an extension. In light of the clear alignment of these factors in Defendant Pinion's column, the Court finds Federal Rule of Civil Procedure 6(b)(1)(B)'s "excusable neglect" standard met though (for reasons discussed in the prior subsection) the third (and most important) <u>Pioneer</u> factor (i.e., "reason for the delay," <u>id.</u>) appears to tilt against him. <u>See</u> <u>id.</u> at 398 (approving finding of "excusable neglect," even if attorney is "remiss," where record lacks "any evidence of prejudice to [opponent] or to judicial administration . . ., or any indication at all of bad faith").[14]

---

[14] Nor is it clear how Plaintiff would benefit from the denial of Defendant Pinion's application for leave to respond to Plaintiff's first set of discovery requests out-of-time. Presumably, Plaintiff wants the information in question or he would not have requested it. Moreover, Plaintiff has no prospect of getting anything better than that information itself, because he failed to move for sanctions related to those discovery requests under Federal Rule of Civil Procedure 37(d)(1)(A)(ii). These (and other) circumstances strongly indicate that Plaintiff has fallen into the understandable but unwise habit of knee-jerk adversarialism. In other words, if Defendant Pinion is for it, Plaintiff is against it. The Court encourages Plaintiff to re-think this approach and to focus on taking litigation positions based on his actual interests, not simply his perceived interest in opposing every position that Defendant Pinion takes.

The Court therefore will allow Defendant Pinion until June 25, 2012, to respond to Plaintiff's pending discovery requests from late February 2012 and April 20, 2012.

*Federal Rule of Civil Procedure 16(b)(4)*

The Federal Rules of Civil Procedure require the issuance of a scheduling order in each case. See Fed. R. Civ. P. 16(b)(2). In this case, Magistrate Judge Sharp adopted a scheduling order that set a discovery deadline of June 1, 2012, and a dispositive motions deadline of July 1, 2012. (Docket Entry 33 at 1.)[15] This four-month discovery period represented the shortest of the default tracks provided by the Local Rules. See M.D.N.C. LR26.1(a).

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). "[T]he touchstone of 'good cause' under [Federal] Rule [of Civil Procedure] 16(b) is diligence." Marcum v. Zimmer, 163 F.R.D. 250, 255 (S.D.W. Va. 1995) (emphasis added); see also Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Defendant Pinion's counsel has represented to the Court that, because of the backlog in his case

---

[15] This dispositive motions deadline reflected a mere memorialization of the deadline that otherwise would have resulted by application of the Court's Local Rules. See M.D.N.C. LR56.1(b) (making dispositive motions due 30 days after close of discovery).

30

load that developed due to his medical emergency, he cannot complete discovery and prepare dispositive motions during the allotted time even with diligent effort. (Docket Entry 36 at 2-3.) The Court has no reason to question those representations[16] and further notes that, unlike with most cases where the parties submit scheduling proposals, Magistrate Judge Sharp exercised his discretion under Local Rule 16.1(a) to enter a scheduling order in this case without such input. Accordingly, Defendant Pinion's counsel did not have an opportunity to request a longer discovery period prior to the adoption of the scheduling order.

In sum, the Court finds good cause under Federal Rule of Civil Procedure 16(b)(4) to extend the discovery and dispositive motions deadlines, but (in the interest of facilitating a reasonably prompt end to this litigation) adopts an extension of only two months rather than the three-and-a-half months Defendant Pinion proposed.

CONCLUSION

The Court could have allowed Defendant Pinion to answer out-of-time and could have rejected Plaintiff's contrary motions simply

---

[16] Plaintiff's filing on this issue provides no basis to question these representations by Defendant Pinion's counsel. (See Docket Entry 37 at 1-2.) Instead, Plaintiff has offered only speculation that Defendant Pinion's counsel could have enlisted another NCDOJ attorney to complete the discovery under the existing schedule. (See id.) The Court declines to adopt this speculative reasoning. Indeed, it seems more reasonable to conclude that the injection of a new attorney into the case at that point also would have necessitated a reasonable extension of the discovery deadline.

31

based on Plaintiff's failure to follow applicable rules. Instead, the Court exercised its discretion to excuse Plaintiff's procedural failings and has considered the merits of Defendant Pinion's application for leave to file a belated answer and Plaintiff's position that the Court should deny such relief in favor of entering a default and default judgment. As a result of that analysis, the untimely answer will be accepted, a default will not be entered, and a recommendation against entry of a default judgment will be made.[17]  In addition, the Court will direct Defendant Pinion to respond to Plaintiff's pending discovery requests within approximately two weeks and will extend the discovery and dispositive motions deadlines by two months.

**IT IS THEREFORE ORDERED** that Defendant Pinion's Motion for Leave to File his Answer and Affirmative Defenses, Instanter (Docket Entry 38) is **GRANTED** and, by June 18, 2012, Defendant Pinion shall file an Answer like the one attached to said Motion.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deny

---

[17] The entry of default constitutes a pretrial matter that does not dispose of any claim; as a result, courts have treated motions regarding such matters as subject to adjudication by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). <u>See, e.g.</u>, <u>Bailey v. United Airlines</u>, 279 F.3d 194, 204 (3d Cir. 2002); <u>L & M Cos., Inc. v. Biggers III Produce, Inc.</u>, No. 3:08CV309-RJC-DCK, 2010 WL 1439411, at *8 & n. 3 (W.D.N.C. Apr. 9, 2010) (unpublished). By contrast, "[a] motion for default judgment is a dispositive motion for purposes of the Magistrate Judges Act." <u>Baltimore Line Handling Co. v. Brophy</u>, 771 F. Supp. 2d 531, 534 (D. Md. 2011).

Defendant Pinion [sic] Motion for Leave to File his Answer and Affirmative Defense, Instanter (Docket Entry 39) and Plaintiff's Motion Asking the Court to Find the Defendant Pinion in Default for Not Filing his Answer by the Deadline to Do So (Docket Entry 43) are **DENIED.**

**IT IS RECOMMENDED** that Plaintiff's Motion for Judgment by Default (Docket Entry 40) be denied.

**IT IS FURTHER ORDERED** that Defendant Pinion's Motion for an Enlargement of Time to Complete Discovery and to File Dispositive Motions (Docket Entry 36) is **GRANTED IN PART** in that Defendant Pinion shall serve responses to Plaintiff's outstanding discovery requests by June 25, 2012, the parties shall complete discovery by August 1, 2012, and the parties shall file any dispositive motions by August 31, 2012.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deny Defendant [Pinion's] Request for Enlargment [sic] of Time to Complete Discovery and to File Dispositive Motions (Docket Entry 37) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for an Order Compelling Discovery (Docket Entry 41) and Plaintiff's Second

33

Motion for an Order Compelling Discovery (Docket Entry 42) are

**DENIED WITHOUT PREJUDICE AS UNRIPE.**

This the 12th day of June, 2012.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**
